```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

KIMBERLY T. STRONG
o/b/o J.B.N., JR.,

                Plaintiff,          06-CV-6500

      v.                      **DECISION**
                                          **and ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security

                Defendant.
_____

## **INTRODUCTION**

Plaintiff Kimberly T. Strong ("Strong"), on behalf of her minor child, Jermaine Nelson, Jr. ("J.B.N.") brings this action pursuant to Title XVI of the Social Security Act ("Act"), codified at 42 U.S.C. § 405(g) claiming that the Commissioner of Social Security ("Commissioner") improperly denied her application for child Social Security Income ("SSI") benefits. Strong appeared pro se during a hearing held on December 13, 2005 before an ALJ.

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct and was supported by substantial evidence and was made in accordance with applicable law. The plaintiff appeals and cross moves for judgment on the pleadings claiming that the ALJ's decision is not supported by substantial evidence in the record and, moreover, the evidence in the record supports a finding of disability and the grant of SSI benefits to the plaintiff.

For the reasons stated below, the case is remanded to the Commissioner.

## DISCUSSION

J.B.N. was born on September 15, 2002, and when he was six months old was hospitalized at Children's Hospital (Strong Memorial Hospital, Rochester, New York) on March 30, 2003 due to severe dehydration which led to neurological insult and ischemic induced encephalopathy and seizures.  On April 4, 2003 an MRI of J.B.N.'s head revealed a global ischemic event with acute infarct.  No evidence of hemorrhage was noted.  He was treated with medication and discharged on April 12, 2003.  (Tr. 153-56 and 201-02.)

The plaintiff, now represented by counsel, claims that the ALJ failed to develop a full record by failing to obtain updated medical and therapy records which accurately reflected J.B.N.'s status as of the date of the hearing (December 13, 2005).  The latest report from Dr. Meyers of the pediatric neurology staff at Strong Memorial Hospital is dated August 26, 2003.  Based on that report, the ALJ concluded that since phenobarbital was stopped after one month "thus [his] seizures are not a severe impairment as they did not last the required 12 months."  (Tr. 21.)  No later reports of Dr. Meyers are in the record although J.B.N. was to be seen by him six months following his August 2003 appointment.

The ALJ also relied upon the "Pediatric Examination" of Dr. George Alexis Sirotenko who examined J.B.N. on August 26, 2003 at the request of the Administration.  However, Dr. Sirotenko is

not a pediatrician but rather a doctor of osteopathy.  (Tr. 240.) Nonetheless, his report noted that J.B.N., who was then 11½ months old, "apparently has some significant developmental delays." His diagnosis was that J.B.N. had "[a] history of cerebral vascular accident.  Trace weakness in the right upper extremity.  Features of global delays involving speech, fine motor activity and gross motor activity. Prognosis: fair." (Tr. 242.)  He also recommended re-evaluation "at a later date may be warranted to determine if current delays persist or have resolved."  (Tr. 243.)

Claimant argues that J.B.N.'s medical records between 2004 and 2006 should have been obtained by the ALJ so that his decision would be based upon a complete updated record since the plaintiff appeared pro se at the time of the hearing.  In addition to updating J.B.N.'s medical records, his progress reports for his developmental delays (speech therapist, physical therapist, special ed teacher, etc.) should be updated as well.  The hearing transcript reveals that J.B.N. has a problem walking.  In response to the ALJ's question, "Is he walking now?", the mother responded, "Yes, he can walk. But he also has coordination problems. That's what he gets done at school therapy."  The ALJ's question, "Okay. What kind of therapy does he get in school?"  Answer: "It's gross motor and like speech/language."  Updated report from the therapist would assess his progress which may have an effect on the degree of limitation in a domain.

Plaintiff argues that J.B.N.'s impairments constitute marked limitations in two domains - the domains of interacting and relating with others and moving about and manipulating objects. Plaintiff argues that a complete record would support their view that J.B.N.'s impairments functionally equal the listings and entitle him to receive Supplemental Security income benefits. In support of her argument, she points to the Bright Start evaluation, dated June 29, 2005, which notes significant delays, including a greater than 25 percent delay in cognitive skills, greater than 33 percent delay in motor skills, and greater than 25 percent delay in daily living skills. (Tr. 111, 116, 118.) Plaintiff also points to the ALJ's finding that J.B.N. has a 25 percent delay in social/emotional skills together with evidence in the record of a 25 percent delay in language skills which he found constituted a marked limitation in this domain.

The ALJ acknowledged in his decision that evidence was produced which demonstrated that J.B.N.'s speech/language skills were delayed 25 percent. J.B.N.'s personal and social skills were delayed 33 percent. His motor skills were delayed greater than 33 percent. The diagnostic impression was of a muscle weakness noted on the right. (Tr. 236.) Updated reports and evaluations subsequent to this date together with updated medical reports are important in determining whether the claimant has an extreme limitation in one domain or a marked limitation in two domains.

The case is therefore remanded to develop a complete record of J.B.N.'s progress (or lack thereof) since his hospital admission on March 30, 2003 for dehydration-induced stroke when he was six months old. The record which the ALJ relied upon in issuing his decision on January 11, 2006 was not complete. It lacked updated medical evidence of J.B.N.'s condition given the fact that barely two years, nine months passed since he sustained a stroke which allegedly left him with neurological abnormalities and functional limitations. Therefore, the case is remanded for further development of the evidence including securing complete updated medical records from the treating doctors and status reports from treating therapists. See Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (remand appropriate for further finding to help assure the proper disposition of the claim).

## CONCLUSION

For the foregoing reasons, the case is remanded to the Commissioner for further proceedings consistent with this opinion. Specifically, the Commissioner is directed to secure complete medical records and status reports from treating therapists and teachers in determining whether or not the infant, J.B.N. is disabled within the meaning of the Act.

ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         August 8, 2008